IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


DONNA THAMES, COLUMBIA BAR &
GRILL, INC., an Oregon corporation, dba
EXOTICA,

              Plaintiff,

     v.

CITY OF PORTLAND, a municipal corporation;
CHARLES HALES; OREGON LIQUOR
CONTROL COMMISSION; STEVEN MARKS;
JOHN ECKHART; DAVID LUSTER;
JEFFREY BELL; SHANNON HOFFEDITZ;
DAN MCNEAL; MIKE BOYER; MERLE
LINDSEY; MARK KRUGER; AMY ARCHER;
JASON TALLMADGE;

              Defendants.

No. 3:16-cv-01634-PK

ORDER

HERNÁNDEZ, District Judge:

Magistrate Judge Papak issued a Findings & Recommendation [53] on July 7, 2017, in which he recommends that this Court grant in part and deny in part the motions to dismiss or strike brought by City Defendants[1] and OLCC Defendants.[2] Defendants David Luster and Jeffrey Bell are not included in either group of defendants and have not joined the motions presently before the Court. The matter is now before the Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b).

When any party objects to any portion of the Magistrate Judge's Findings & Recommendation ("F&R"), the district court must make a *de novo* determination of that portion of the Magistrate Judge's report. 28 U.S.C. § 636(b)(1); *Dawson v. Marshall*, 561 F.3d 930, 932 (9th Cir. 2009); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

City Defendants raise several objections to the F&R. City Defendants argue that: (1) Plaintiffs failed to adequately allege causation for their claims, (2) Plaintiffs failed to adequately allege race-based animus with respect to Defendants Mr. Kruger and Ms. Archer, (3) Defendants Ms. Archer and Mr. Hales are entitled to qualified immunity, and (4) the Court should strike the historical allegations contained in paragraphs 27-30 of the complaint. The Court rejects City Defendants' objections, except that it agrees Defendants Ms. Archer and Mr. Hales are entitled to qualified immunity.

OLCC Defendants object to the F&R's denial of their motion to dismiss Plaintiffs' Claim 12, alleging intentional interference with economic relations; and Claim 13, alleging intentional infliction of emotional distress. The Court agrees with OLCC Defendants' objections and declines to adopt the F&R as to Claims 12 and 13.

[1] The City Defendants are City of Portland, Charles Hales, Mike Boyer, Mark Kruger, and Amy Archer.
[2] The OLCC Defendants are Oregon Liquor Control Commission ("OLCC"), Steven Marks, John Eckhart, Shannon Hoffeditz, Dan McNeal, Merle Lindsey, and Jason Tallmadge.

2 – ORDER

The Court has also reviewed the pertinent portions of the record *de novo* and finds no other errors in the Magistrate Judge's F&R.

## I.      Causation

City Defendants object to the F&R's conclusion that Plaintiffs sufficiently alleged that Defendants' behavior caused the damages Plaintiffs suffered due to the Club's closure. Their objections mirror the arguments already put forth and rejected by Magistrate Judge Papak.

In their motion to dismiss, City Defendants brought a broad challenge to all of Plaintiffs' claims against them, arguing that Plaintiffs failed to allege adequate causation. According to City Defendants, Plaintiffs' injuries and damages arise solely out of the closure of the Club. City Defendants argue that Plaintiffs fail to allege facts plausibly suggesting that the City's investigation, negotiation, or request for a nuisance abatement plan caused Plaintiff Ms. Thames to close her business.

Magistrate Judge Papak correctly rejected City Defendants' arguments, finding that Plaintiffs' alleged damages include more than just damages caused by the Club's closure. F&R 25, ECF 53. More importantly, Plaintiffs have adequately alleged that Defendants' conduct caused Plaintiff to close the Club. *Id.* Magistrate Judge Papak provides a detailed recitation of facts alleged in the complaint that, when taken as true, support this conclusion. *Id.* at 25-28.

In their objections, City Defendants repeat the assertion that all of Plaintiffs' alleged damages, both non-economic and economic, arise solely out of the closure of the Club. However, City Defendants ignore paragraph 179 of Plaintiffs' Complaint, which is incorporated by reference into all of Plaintiffs' claims for relief:

> As a direct and proximate result of Defendants' actions as alleged herein, Plaintiffs have suffered non-economic damages in the form of loss of reputation, bodily harm, emotional and mental distress, degradation, embarrassment, and humiliation for which Plaintiff seeks compensation in an amount to be proved at trial, but no less than $5,000,000.

Compl. ¶ 179. Such actions, "as alleged herein," include acts preceding the closure of the Club.

Plaintiffs make similar allegations regarding economic damages. *See* Compl. ¶ 178. Thus, City

Defendants' objection is unavailing.

**II.      Allegations of Race-Based Animus as to Defendants Kruger and Archer**

City Defendants object to Magistrate Judge Papak's conclusion that race-based claims

against Defendants Mr. Kruger and Ms. Archer could withstand a motion to dismiss, despite the

absence of express allegations that Mr. Kruger or Ms. Archer knew that Plaintiff Ms. Thames is

African-American. City Defendants did not seek this relief in their motion to dismiss. Instead,

City Defendants sought dismissal of entire claims, not dismissal as to individual defendants.

While City Defendants' Reply does state, in the context of seeking dismissal of Plaintiffs'

conspiracy claim, that there are no facts alleging that Mr. Kruger or Ms. Archer knew Plaintiff

was African-American, their motion to dismiss did not make any argument as to Mr. Kruger's or

Ms. Archer's knowledge of Ms. Thames' race. *See Delgadillo v. Woodford,* 527 F.3d 919, 930 n.

4 (9th Cir. 2008) (holding that reply is not proper place to raise new arguments). The issue of

whether all race-based claims against Mr. Kruger and Ms. Archer could proceed was never

squarely presented to Magistrate Judge Papak. The Court declines to exercise its discretion to

consider such argument at this point. *See Brown v. Roe*, 279 F.3d 742, 745-46 (9th Cir. 2002)

(rejecting the Fourth Circuit's holding that a district court must consider new arguments raised

for the first time in an objection to a magistrate judge's F&R); (*United States v. Howell,* 231 F.3d

615 (9th Cir. 2000) ("[I]t would be fundamentally unfair to permit a litigant to set its case in

motion before the magistrate, wait to see which way the wind was blowing, and—having

received an unfavorable recommendation—shift gears before the district judge." (citation

omitted)); *Olmos v. Ryan,* No. CV-11-00344-PHX-GMS, 2013 WL 3199831, at *8 (D. Ariz.

4 – ORDER

June 24, 2013) ("Generally, a district court need not consider new arguments raised for the first time in objections to an R & R.").[3]

**III.    Qualified Immunity for Defendants Archer and Hales**

The Court agrees with City Defendants' objection to Magistrate Judge Papak's conclusion that Defendants Ms. Archer and Mr. Hales are not entitled to qualified immunity.

In their motion to dismiss, City Defendants argued that Ms. Archer and Mr. Hales were entitled to qualified immunity. As to these two defendants, Plaintiffs bring eight claims:

1. 42 U.S.C. § 1981—Race Discrimination
2. 42 U.S.C. § 1983—14th Amendment Procedural Due Process
3. 42 U.S.C. § 1983—14th Amendment Equal Protection
4. 42 U.S.C. § 1983—First Amendment
5. 42 U.S.C. § 1985(3)—Conspiracy to Interfere with Civil Rights
6. 42 U.S.C. § 1986—Action for Neglect to Prevent Interference with Civil Rights
7. Intentional Interference with Economic Relations
8. Intentional Infliction of Emotional Distress

In all of these claims, Plaintiffs assert that Ms. Archer and Mr. Hales are liable based on their individual actions. In addition, in five[4] of the claims, Plaintiffs allege that their liability stems from their involvement in a conspiracy with the other defendants.

Magistrate Judge Papak did not directly consider Ms. Archer's and Mr. Hales' claims of immunity; instead, he denied qualified immunity for all City Defendants as to Plaintiff's § 1985(3), § 1986 and § 1983—Equal Protection claims "because all of the defendants are alleged to have intentionally treated African-American venue-owners differently than similarly-situated white venue owners" and "because all of the defendants are alleged to have intentionally

---

[3] City Defendants may choose to raise this argument in response to the amended complaint that Plaintiffs must submit, pursuant to this Order.

[4] Plaintiffs specifically alleged Ms. Archer's and Mr. Hales' involvement in a conspiracy in the following claims: 42 U.S.C. § 1983—14th Amendment Procedural Due Process; 42 U.S.C. § 1983—14th Amendment Equal Protection; 42 U.S.C. § 1983—First Amendment; 42 U.S.C. § 1985(3) Conspiracy to Interfere with Civil Rights; and 42 U.S.C. § 1986—Action for Neglect to Prevent Interference with Civil Rights.

conspired to deprive plaintiffs of their protected civil rights." F&R 46. He did not discuss immunity as to the other claims against Ms. Archer or Mr. Hales.

"Qualified immunity 'represents the norm' for government officials exercising discretionary authority." *Lacey v. Maricopa Cty.,* 693 F.3d 896, 915 (9th Cir. 2012) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 807 (1982)). "[Q]ualified immunity is an immunity from suit and not merely damages." *Id.* "Under qualified immunity, an officer is protected from suit when he makes a reasonable mistake of law or fact." *Id.* (citing *Pearson v. Callahan,* 555 U.S. 223, 231 (2009)).

Determining whether a defendant is entitled to qualified immunity involves a two-pronged analysis. First, the Court asks, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz,* 533 U.S. 194, 201 (2001), *overruled in part by Pearson,* 555 U.S. at 235–236. Second, the Court asks "whether the right was clearly established." *Id.* A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

The Court has discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson,* 555 U.S. at 236; *see also Mueller v. Auker,* 576 F.3d 979, 993–94 (9th Cir. 2009). "Only when an officer's conduct violates a clearly established constitutional right—when the officer should have known he was violating the Constitution—does he forfeit qualified immunity." *Lacey*, 693 F.3d at 915.

///

A.  Ms. Archer

Ms. Archer was employed by the City of Portland as the Acting Director/Operations and

Livability Programs Manager for the Office of Neighborhood Involvement. Compl. ¶ 24. As the

F&R notes, the complaint has many allegations that *all* defendants were motivated by racial

animus. *See* F&R 32, ECF 53. However, Plaintiff's complaint only contains one allegation

specifically regarding Ms. Archer's actions. Plaintiff alleges that, in a letter to Ms. Thames on

August 25, 2015, Ms. Archer wrote:

> Dear Ms. Thames,
>
> This letter is to advise you, as the licensee responsible for operating Exotica, that due to
> your failure to enter into an acceptable abatement plan to resolve the Time Place Manner
> Ordinance violation, the City of Portland intends to file a petition with the Code
> Hearing's Office to address the violation. You will receive notice of the hearing once
> scheduled.
>
> If you have questions, you may contact Mike Boyer, Office of Neighborhood
> Involvement Liquor License Program Coordinator at 503-823-3092.

Compl. ¶ 168.

Plaintiffs do not dispute that Ms. Thames did not enter into an abatement plan or that the

Director of the Office of Neighborhood Involvement or the Chief of Police may file a complaint

with the Code Hearings Officer when "1) The licensee refuses to actively and meaningfully

participate in the process of developing a nuisance abatement plan; or (2) The effort by the

Director or the Chief of Police to develop a nuisance abatement plan with the licensee fails."

Portland City Code & Charter ("P.C.C.") Ch. 14B.120.040(D) (available at

https://www.portlandoregon.gov/citycode/article/366259) (last accessed August 29, 2017). The

Court fails to see how Ms. Archer's letter could constitute a constitutional violation. *See White v.*

*Pauly*, 137 S. Ct. 548, 552 (2017) ("[C]learly established law should not be defined at a high

level of generality . . . [instead] the clearly established law must be particularized to the facts of

the case . . . Otherwise, plaintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.") (internal quotation marks and citations omitted).

Alternatively, even if sending the letter did violate a constitutional right, the Court agrees with City Defendants that nothing about Ms. Archer's conduct would have suggested to her that she was violating Plaintiffs' constitutional rights. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) ("A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.") (internal quotations omitted). Therefore, to the extent Plaintiffs' claims against Ms. Archer are based solely on Ms. Archer's individual conduct, the Court finds that Ms. Archer is entitled to qualified immunity.

Plaintiffs also assert that Ms. Archer's liability stems from her involvement in a conspiracy with the other defendants.[5] As the Ninth Circuit has explained, "[c]onspiracy is not itself a constitutional tort under § 1983" and "[i]t does not enlarge the nature of the claims asserted by the plaintiff, as there must always be an underlying constitutional violation." *Lacey*, 693 F.3d at 935. "Conspiracy may, however, enlarge the pool of responsible defendants by demonstrating their causal connections to the violation; the fact of the conspiracy may make a party liable for the unconstitutional actions of the party with whom he has conspired." *Id.* "A defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial

---

[5] The Court notes that the Ninth Circuit has not yet addressed "whether individual members of a single governmental entity can form a 'conspiracy.'" *Portman v. County of Santa Clara*, 995 F.2d 898, 910 (9th Cir. 1993); *Bey v. Oakland*, No. 14-CV-01626, 2015 WL 8752762, at *14 (N.D. Cal. Dec. 15, 2015) (discussing split in authority among the circuit courts applying the intra-corporate conspiracy doctrine and explaining that five circuits currently bar conspiracy claims where allegations involve a single governmental entity conspiring with its employees whereas four circuits have refused to apply the doctrine). The Court does not need to address the issue at this time because it finds Plaintiffs' claims deficient on other grounds.

evidence and from evidence of the defendant's actions." *Id.* As with all of Plaintiffs' claims, their allegations of conspiracy must satisfy *Iqbal. Id.*

Here, the complaint contains no evidence of Ms. Archer's actions that would suggest her knowledge of an alleged conspiracy or a part in a common objective. Nor does the complaint contain any circumstantial evidence regarding Ms. Archer. *See Iqbal*, 556 U.S. at 681 (requiring factual allegations that would plausibly suggest an entitlement to relief). At most, the complaint contains legal conclusions such as: "As demonstrated by the actions described above, all defendants . . . by agreement and concerted action, conspired to, intended to, and did in fact deprive plaintiffs of their rights under the Fourteenth Amendment to the United States Constitution." Compl. ¶ 188. Such allegations are not enough to satisfy *Iqbal*. *See also Lacey,* 693 F.3d at 935 ("To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy."). Thus, Plaintiffs fail to state a claim as to Ms. Archer's liability based on her involvement in a conspiracy.

B.  Mr. Hales

Mr. Hales was the Mayor of Portland at the time relevant to this lawsuit. Compl. ¶ 13. Plaintiff's complaint contains only one allegation regarding a specific action taken by Mr. Hales. On June 18, 2015, Ms. Thames wrote an email to defendant Mike Boyer, Liquor License Program Coordinator for the City's Office of Neighborhood Involvement, and copied numerous City and OLCC employees, including Mr. Hales. *Id.* at ¶ 160. Mr. Hales did not respond to Ms. Thames' email. *Id.* at ¶ 162. Instead, Mr. Boyer responded the following day. *Id.* ¶ 163. The complaint also alleges that, "[o]n information and belief, Defendant Mayor Hales directed the acts of his City employees described herein." *Id.* at ¶ 170.

As to Mr. Hales' failure to respond to Ms. Thames' email or his alleged involvement in a conspiracy, he is entitled to qualified immunity for the same reasons that apply to Ms. Archer. The only question is whether liability can be imposed on Mr. Hales based on the allegation that he directed the acts of his City employees. The Court agrees with City Defendants that such allegation is devoid of any factual content. The mere fact that Mr. Hales held the position of Mayor is insufficient to render him liable. *Iqbal,* 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*"). Plaintiffs fail to state a claim as to Mr. Hales.

## IV.    Motion to Strike

The Court rejects City Defendants' objections to Magistrate Judge Papak's denial of their motion to strike the historical allegations contained in paragraphs 27-30 of the complaint. "The rationale behind granting a motion to strike is to avoid prejudice to a party by preventing a jury from seeing the offensive matter or giving the allegation any unnecessary notoriety." *Snow v. Summers*, No. 10-6224-HO, 2011 WL 1545610, at *1 (D. Or. Apr. 21, 2011) (citing *Wailua Assocs v. Aetna Cas. & Sur. Co.,* 183 F.R.D 550, 553 (D. Haw. 1998)). Thus, a motion to strike is disfavored in the absence of prejudice. *Id.* Here, the Court does not find that Defendants are prejudiced by allowing the allegations to remain in the complaint. As in *Snow*, any inappropriate allegations will not be taken into account by the Court or submitted to a jury. *See id.* at *2. At this point in the proceeding, however, Defendants have not met their burden to demonstrate that the Court should strike the allegations.

## V.    Plaintiffs' Claim 12: Intentional Interference with Economic Relations ("IIER")

To state a claim for intentional interference with economic relations ("IIER"), a plaintiff must allege each of the following elements: "(1) the existence of a professional or business

relationship (which could include, *e.g.,* a contract or a prospective economic advantage), (2)

intentional interference with that relationship, (3) by a third party, (4) accomplished through

improper means or for an improper purpose, (5) a causal effect between the interference and

damage to the economic relationship, and (6) damages." *McGanty v. Staudenraus*, 321 Or. 532,

535, 901 P.2d 841, 844 (1995)

City Defendants moved to dismiss Plaintiffs' claim for intentional interference with

economic relations, arguing that Plaintiffs failed to adequately allege that City Defendants

interfered with Plaintiffs' business relationships and caused the Club to close. For the reasons

discussed above, the Court adopts Magistrate Judge Papak's conclusion that Plaintiffs have

adequately alleged causation. Thus, Magistrate Judge Papak correctly denied City Defendants'

motion to dismiss on this basis.

On the other hand, the Court disagrees with Magistrate Judge Papak's recommendation to

deny OLCC Defendants' motion to dismiss Plaintiffs' claim as to all individual OLCC

Defendants. In their motion, OLCC Defendants argued that Plaintiff fails to point to any specific

acts that constitute interference with any business relationship. They also argued that Plaintiffs

fail to plead that OLCC Defendants acted by improper means or for an improper purpose.

Finally, they contended that Plaintiff fails to plead a plausible allegation that OLCC Defendants

caused Plaintiffs' damages.

The Court agrees with Magistrate Judge Papak, for the reasons explained in the F&R, that

Plaintiffs have adequately pleaded improper purpose and causation. However, Plaintiffs fail to

identify specific acts taken by OLCC Defendants that constitute interference with any business

relationship. Plaintiffs' allegations against Mr. Marks, Director of OLCC, consist of the

allegation that he never brought to the Commission Ms. Thames' requests to have OLCC's

restrictions on her license removed, Compl. ¶¶ 59-62; he called Ms. Thames' attorney to inform him that OLCC was conducting an investigation into her case, Compl. ¶¶ 110, 112; he delayed an OLCC meeting, Compl. ¶ 113; and he attended at least two meetings with Ms. Thames and others. Compl. ¶¶ 114, 120. As to Mr. Eckhart, OLCC Director of Public Safety, he is alleged to have attended two meetings with Ms. Thames and others, Compl. ¶¶ 114, 123. Shannon Hoffeditz, OLCC Regional Manager, also never alerted the Commission regarding Ms. Thames' request to have restrictions removed, Compl. ¶ 62; she spoke with Mr. Thames during an incident involving Ms. Thames, Mr. Luster, and Mr. Bell, Compl. ¶ 99; she attended a meeting with Ms. Thames and others, Compl. ¶¶ 123, 129; she sent Ms. Thames a questionnaire, Compl. ¶ 125; and she emailed Ms. Thames, Compl. ¶ 139. Plaintiff alleges that Mr. Lindsey, acting Executive Director of OLCC, also failed to bring Ms. Thames' requests to the Commission. Compl. ¶ 59. The only allegation regarding Mr. McNeal, an OLCC License Inspector, is that he compiled a list for OLCC of "21 events that supposedly had some bearing on Ms. Thames' written request that the license restrictions be lifted." Compl. ¶ 129. Finally, Plaintiff alleges that Mr. Tallmadge, an OLCC Inspector, made false accusations regarding the adequacy of Plaintiffs' security patrols and false statements to the Commission regarding the issuance of a proposed license cancellation. Compl. ¶¶ 55-57, 67, 73-75.

Plaintiffs fail to identify how any of the acts listed above interfered with an existing professional or business relationship held by Plaintiffs. Instead, Plaintiffs seek to impute liability on to all the individual defendants by virtue of their involvement in a conspiracy. *See* Pl.'s Resp. 2-3, ECF 66 ("The OLCC Defendants' arguments ignore plaintiffs' allegations that the OLCC defendants entered into a conspiracy."). According to Plaintiffs, OLCC Defendants acts "may

seem innocent in isolation" but they are wrongful and actionable in the context of their coordinated effort to advance a conspiracy.

The problem with Plaintiffs' argument is that nowhere in their IIER claim is there any mention of a conspiracy. Instead, the claim is brought against "Individual Defendants" and alleges that the "above named defendants interfered with plaintiff's business relations with patrons, customers, the landlord, providers and others by the improper means and with improper motives." Compl. ¶ 251. This language stands in contrast to Plaintiffs' Claims 2, 4, 5, 6, 7, all of which state that Defendants conspired and deprived Plaintiffs of their rights "by agreement and concerted action." *See* Compl. ¶¶ 188, 203, 216, 222, 227. In sum, the complaint, as written, fails to adequately state a claim for IIER as to OLCC Defendants.

## VI.     Plaintiffs' Claim 13: Intentional Infliction of Emotional Distress ("IIED")

"To state a claim for intentional infliction of severe emotional distress, a plaintiff must plead that (1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct." *McGanty*, 321 Or. at 543, 901 P.2d at 849.

City Defendants moved to dismiss Plaintiffs' IIED claim, repeating the same argument regarding causation that has been discussed above. The argument fails. OLCC Defendants' motion to dismiss Plaintiffs' IIED contended that Plaintiffs failed to adequately plead the first or third elements of an IIED claim as to any of the individual OLCC defendants. In response, Plaintiffs did not present any specific argument as to any specific OLCC defendants. Instead, Plaintiffs argued that the complaint's allegations, "taken as a whole," support the inference that

OLCC Defendants wanted Ms. Thames to fail and conspired with City Defendants, because of racial animus.

Whether the alleged conduct constitutes an extraordinary transgression of the bounds of socially tolerable conduct is a question of law for the court. *Harris v. Pameco Corp.*, 170 Or. App. 164, 171, 12 P.3d 524, 529 (2000). In a 2008 case, the Oregon Court of Appeals explained the following parameters of the tort:

> A trial court plays a gatekeeper role in evaluating the viability of an IIED claim by assessing the allegedly tortious conduct to determine whether it goes beyond the farthest reaches of socially tolerable behavior and creates a jury question on liability.
>
> * * *
>
> As explained in the *Restatement [(Second) of Torts]* at § 46 comment d [1965]: "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

*House v. Hicks*, 218 Or. App. 348, 358, 179 P.3d 730, 736 (2008) (internal quotation marks and citations omitted).

The actual allegations in Plaintiffs' complaint are insufficient to "meet the very high standard" of "an extraordinary transgression of the bounds of socially tolerable conduct," in order to state an IIED claim against OLCC Defendants. As with the IIER claim, the Court declines to view the IIED claim through Plaintiffs' proposed lens of conspiracy, when the complaint itself does not plead such facts for this claim. Thus, the Court dismisses Plaintiffs' IIED claim against OLCC Defendants.

## VII.    Leave to Amend

If the Court dismisses a complaint, it must decide whether to grant leave to amend. *See* 28 U.S.C. § 1653. The Ninth Circuit has repeatedly held that dismissal without leave to amend is improper, even if no request to amend the pleading was made, unless it is clear that the defective

pleading cannot possibly be cured by the allegation of additional facts. *Snell v. Cleveland, Inc.*, 316 F.3d 822, 828 n. 6 (9th Cir. 2002) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 692 (9th Cir. 2001)); *Lopez v. Smith*, 203 F.3d 1122, 1130–31 (9th Cir. 2000). Because Plaintiffs may be able to cure the deficiencies in their pleadings by the allegation of additional facts, the Court grants Plaintiff leave to amend.

///

///

///

///

///

///

///

///

///

**CONCLUSION**

The Court adopts in part and declines to adopt in part Magistrate Judge Papak's Findings

and Recommendation [53], as follows:

- City Defendants' Motion [20] to Dismiss and to Strike is granted as to Plaintiffs'
Claim 2—14th Amendment Procedural Due Process. The motion is also granted as to
Plaintiffs' Claim 5—First Amendment, to the extent premised on Plaintiffs' right to
free association. City Defendants Ms. Archer and Ms. Hales are entitled to qualified
immunity and are dismissed from the case. Otherwise, the motion is denied.

- OLCC Defendants' Motion [42] to Dismiss and Strike is granted as to Plaintiffs'
Claim 2—14th Amendment Procedural Due Process; Claim 5—First Amendment, to
the extent premised on Plaintiffs' right to free association; Claim 12—IIER; and
Claim 13—IIED. The motion is also granted as to the following of Plaintiffs' claims
against OLCC: Claim 9—Assault, Claim 10—Battery, and Claim 11—False Arrest.
Otherwise, the motion is denied.

Plaintiffs are granted leave to amend. Even if Plaintiffs choose not to amend the

dismissed claims, they must submit an amended complaint that reflects this Court's rulings as to

City Defendants' and OLCC Defendants' motions. Plaintiffs' amended complaint is due within

10 days of the date below.

IT IS SO ORDERED.


DATED this _____3_____ day of _____October_____ , 2017.



_____
MARCO A. HERNÁNDEZ
United States District Judge